**JOHN L. BURRIS, ESQ., SBN 69888**
**BEN NISENBAUM, ESQ., SBN 222173**
**JAMES COOK, ESQ., SBN 300212**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport Street, Suite 1120 Oakland, CA 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
Email: John.Burris@johnburrislaw.com
Email: Ben.Nisenbaum@johnburrislaw.com
Email: James.Cook@johnburrislaw.com

Attorneys for Plaintiffs
MARIA TERESA GONZALEZ, et al.,

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA TERESA GONZALEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF STANISLAUS, et al., <br><br> Defendants. | Case No.: 1:21-cv-01091-ADA-HBK <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br> **Judge:** Hon. Ana de Alba |

### I. DEFENDANTS CLAIM THAT PLAINTIFFS' FACTS ARE UNSUPPORTED

Defendants generally contend that the facts asserted by plaintiffs are not supported by evidence. In response, plaintiffs assert that the body worn cameras (BWC) depict the entire incident. Both plaintiffs and defendants rely on the BWCs to support their assertions. The issue of contention is how the events are interpreted in the context of relevant law.

As previously stated, the Ninth Circuit instructs courts to "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in Graham.'" *Bryan v. MacPherson,* 630 F.3d 805, 826 (9th Cir. 2010) *(quoting*

*Franklin v. Foxworth,* 31 F.3d 873, 876 (9th Cir. 1994)). Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to the officer that the person was emotionally disturbed. *See, e.g., Glenn v. Washington County,* 673 F.3d 864, 872 (9th Cir. 2011).

Here, the deputies initiated a violent confrontation with Mr. Gonzalez. (Body Worn Camera Footage (BWC): Sierra 1:02 - 1:11; Lewis :43 - :59) Gonzalez's responses to deputies demonstrated his mental crisis. (BWC: Silva 1:02 -1:11; Sierra :43 - :59; Silva :53 - 1:03) Gonzalez had his hands up, when deputy Gomez shot him with the bean bag. (BWC: Silva 2:01 - 2:06) Mr. Gonzalez did not present an imminent threat of serious bodily harm, when Deputy Lewis "sicced" the dog on him and began punching him. *Ibid*. Even when Gonzalez retrieved the axe, the deputies had less lethal options. The deputies could have stopped and repositioned commensurate with their Crisis Intervention Training (CIT). (LD 20: Chapter 3 –Use of Deadly Force, page 3-3.) (Clark 12 - 13) Thus, plaintiffs' assertions are supported by the evidence.

### A. Gonzalez's Retrieving The Axe Was A Natural Reaction To Unnecessary Use of Force

The BWCs show that Gonzalez had his hands up. (BWC: Silva 2:01 - 2:06) He did not present an imminent threat of harm when deputy Gomez shot him with a beanbag. *Ibid*. Even when he was attacked by the dog, the footage shows that Gonzalez attempted to actually pet the dog in order to calm it down. Id. Thus, Gonzalez retrieving the axe was a natural reaction to being abused.

### B. The BWC Demonstrates Objective Signs of Gonzalez's Mental Illness

Deputies Noel and Sierra arrived on the scene to investigate a burglar alarm. They encountered Gonzalez surrounded by cardboard—an obvious sign of homelessness. (BWC: Silva 1:02 -1:11; Sierra :43 - :59; Silva :53 - 1:03) Then Gonzalez responds to their commands with nonsensical statements: "My father is a Senator... he owns the building. Put your guns away. If you shoot me, you're not doing your job." (BWC: Silva 1:02 -1:11; Sierra :43 - :59; Silva :53 - 1:03). These statements (that his father owned the building) paired with Gonzalez's obvious homelessness clearly demonstrates that Gonzalez was not dealing in reality and was experiencing a mental health crisis. Plaintiffs Police practices expert, Roger Clark, simply made these commons-sense observations (that the officers should have made) in his report. Clark did not intend to provide an

official diagnosis—nor was a diagnosis needed to assess this situation. (Clark 12 - 17) Thus, based on the BWC footage a reasonable officer would have concluded that Gonzalez was dealing with mental illness.

## II. DEFENDANT'S ARGUMENTS

### A. Defendants Maintain That Plaintiffs Did Not Establish That They Are Entitled To Judgment As A Matter Of Law On The Fourth Amendment Excessive Force Claim

#### 1. <u>Defendants Assert that Plaintiffs Misapply Use of Force Standards</u>

Defendants assert that Plaintiffs' *Graham* analysis was wrong. Specifically, they believe that Plaintiffs "failed to address: The single most important element" of the *Grahm* analysis: whether the suspect poses an immediate threat to the safety of the officers or others. *Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005)*. An officer's use of deadly force is reasonable if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner, 471 U.S. 1, 3 (1985).*

Here, Defendants declare that plaintiffs failed to properly address each use of force. This is patently untrue. In fact, Plaintiffs provided an analytical framework analyzing the totality of the circumstances in the context of *Graham*. Plaintiffs offered a phased analysis as follows:

*Phase 1: Deputies arrive on the scene and encounter Gonzalez surrounded by a cardboard shelter. (Body Worn Camera Footage (BWC): Sierra 1:02 - 1:11; Lewis :43 - :59)*

*Phase 2: Deputies Gomez shoots Gonzalez with a beanbag round, while Gonzalez hands are raised. (BWC: Silva 2:01 - 2:06)*

*Phase 3: Deputy Lewis release the dog, approaches, and begins punching Gonzalez.(BWC: Silva 2:01 - 2:06; Coffman 1:30 - 1:35)*

*Phase 4: Deputies Lewis and Silva shoot Gonzalez after he naturally reacts to police excessive force. (BWC: Silva 2:00 - 2:06 - 2:11; Coffman 1:22 - 1:25)*

The consideration is whether Mr. Gonzalez posed an imminent threat during any phase of the encounter. Plaintiffs maintain that Gonzalez did not pose a threat at any stage. Moreover, when he did retrieve the axe, there were less lethal alternatives available. *Id.* The deputies could have used

their training to back up, reposition, and de-escalate the situation. (LD 20: Chapter 3 –Use of Deadly Force, page 3-3.) (Clark 14 - 17) Thus, plaintiffs did not misapply the use of force standard.

2. **Defendants Claim Use of Lethal Force Was Objectively Reasonable**

In proposing this theory, defendants offer that the single most important *Graham* factor is whether the suspect poses an immediate threat to safety. *Smith, 394 F.3d at 702*. Defendants specifically focus on the axe. But they do not consider the circumstances leading up to the shooting as is required by the Ninth Circuit. *Bryan v. MacPherson, 630 F.3d 805, 826*. Gonzalez did not pose a threat when the deputies initiated the confrontation. Gonzalez's hands were raised. (BWC: Silva 2:01 - 2:06) Even after he was shot with a bean bag, attacked by the dog, and beaten by deputy Lewis, Gonzalez posed no threat. Even once the axe was introduced, deputies could have de-escalated. *Id*. In this situation they were dealing with a mentally ill citizen instead of someone engaged in a criminal act. Using deadly force did not serve the governments interests. *Vos, 892 F.3d at 1034*. Thus, the use of lethal force was unreasonable.

3. **Defendants Submit that The Fourth Amendment Is Not Violated By "Bad Tactics**

Defendants position that the Fourth Amendment was not violated by "Bad Tactics" is inconsistent with Ninth Circuit case law analyzing *Graham*. The Fourth Amendment standard of "objective reasonableness" governs the use of force by police officers. *Graham v Connor, 490 U.S. 386, 394-99 (1989); Scott v. Harris, 550 U.S. 372, 381-83 (2007)*. Of these, the most important factor is the immediate threat that the suspect posed. "These factors are not exclusive, and [courts] consider the totality of the circumstances." *Lam v. City of San Jose, No. 16-16052 (9th Cir. 2017)*. Tactical considerations are one factor to be considered within the totality.

Considering the totality of the circumstances, Gonzalez did not present an immediate threat of harm. Throughout each phase of the incident, deputies could have de-escalated the situation according to their training. Tactically, deputies could have used time, space, and tactical repositioning to gain compliance. (LD 20: Chapter 3 –Use of Deadly Force, page 3-3.) (Clark 12 - 13). Instead, deputies attacked Gonzalez while his hands were raised. (BWC: Silva 2:01 - 2:06) They further escalated by deploying a dog. Id.

Further, the *Deorle* court found that "bad tactics" resulting in shooting a suspect may violate Constitutional rights under the Fourth Amendment objective reasonableness standard. Deorle's situation was similar to Gonzalez. Here the Court commented on "bad tactics" as follows:

> The problems posed by, and thus the tactics to be employed against, an emotionally distraught individual who is creating a disturbance or resisting arrest are, and must be, differentiated from those involved in efforts to subdue an armed and dangerous criminal who has recently committed a serious offense. In the former instance, increasing the use of force may, in a number of circumstances, exacerbate the situation; in the latter instance, a heightened use of less-than-lethal force will ordinarily be helpful in bringing a dangerous situation to a swift end. In the case of mentally unbalanced persons, the use of officers and others trained in the art of counseling is ordinarily advisable, and may provide the best means of ending the crisis. Even when an emotionally disturbed individual is "acting out" and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a criminal, but with a mentally ill person. *Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001).*

While "bad tactics" are not the determinative, they are an analytical factor. In terms of the Gonzalez case, the deputies' tactical approach created a situation leading to the use of deadly force. Thus, "bad tactics" is a factor supports plaintiffs' contention that Gonzalez was subjected to a Fourth Amendment violation.

**B. Defendants Contend That Deputies Are Entitled To Qualified Immunity**

Defendants observe that to overcome defendants' qualified immunity defense, plaintiffs must identify precedent in which an officer acting under similar circumstances was held to have violated the Constitution. *Davis v. Scherer, 468 U.S. 183, 197 (1984); S.B. v. County of San Diego, 864 F.3d 1010, 1015-16 (9th Cir. 2017); Romero v. Kitsap, 931 F.2d 624, 627 (9th Cir. 1991).*

First, defendants are proposing that plaintiffs must identify a case that is exactly on point. However, it is not necessary to identify a case that it is "directly on point;" generally, the plaintiff

needs to identify where an officer acting under similar circumstances was held to have violated a federal right. *Wesby, 138 U.S. at 589-90*. The Supreme Court has repeatedly stated that a prior opinion with the same facts is not necessary to clearly establish the law. *Hope v. Pelzer, 536 U.S. 730 (2002); Taylor v. Riojas, 141 S.Ct. 52 (2020)*. Indeed, the qualified immunity analysis should be more than "a scavenger hunt for prior cases with precisely the same facts." *Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007)*.

Second, the Ninth Circuit "measures qualified immunity by the same standard it measures the excessive force at issue". In other words, the qualified immunity test is the same as the testing the merits of an excessive force claim. *See Scott v. Henrich, 39 F.3d 912, 914 (9th Cir.1994); Headwaters Forest, 211 F.3d at 1141; Alexander, 29 F.3d at 1367; Chew, 27 F.3d at 1449 n. 19*. Accordingly, in line with established Ninth Circuit precedent, it is clear that because, on the facts presented, viewed in the light most favorable to the plaintiff, a jury could find that the force used was unreasonable. *Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001)*.

Third, *Vos* is instructive and comparable. *Vos v. City of Newport Beach, 892 F.3d 1024 (2018)*. In *Vos*, officers were called to the scene because of Vos's erratic behavior and Vos was not resisting arrest. *Id., 892 F.3d at 1031*. Even though Vos actually ran at the officers with an edged weapon in his hand, the Court found that questions of fact regarding whether he was an immediate threat precluded summary judgment and found that a jury could find a Constitutional violation. *Vos, 892 F.3d at 1034-36*. Gonzalez did not run at the deputies with a hatchet. Gonzalez gripped the hatchet for approximately one second before deputies killed him. (BWC: Silva 2:00 - 2:06 - 2:11; Coffman 1:22 - 1:25). Thus, the deputies conduct here amounts to a Constitutional violation for which they are not entitled to qualified immunity.

### III. Defendants Assert that Plaintiffs' Do Not Seek Summary Judgment On The Fourteenth Amendment Claim

Defendants purport that Plaintiffs make no effort to present evidence or argument to show that they are entitled to judgment as a matter of law on this cause of action. On the contrary. Gonzalez successors-in-interest asserted a "Fourteenth Amendment claim based on the related deprivation of their liberty interest arising out of their relationship with" a decedent, separate from a

survival action for Fourth Amendment violations. *Moreland, 159 F.3d at 371*. "This substantive due process claim may be asserted by [] the [spouse,] parents and children of a person killed by law enforcement officers." *Moreland, 159 F.3d at 371*. The Fourteenth Amendment's substantive due process clause protects against "government power arbitrarily and oppressively exercised." *County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)*. "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008) (citation omitted)*.

Here, it must be noted that the successors-in- interest have standing to propound a 14th Amendment action. (EFC Docket #13, September 22, 2021) Furthermore, this cause of action arises because deputies initiated a violent confrontation, while Gonzalez had his hands raised. (BWC: Silva 2:01 - 2:06) Deputies escalated and therefore created a situation that they had to use lethal force. Id. This type of conduct is exactly what shocks the conscience. Thus, plaintiffs assert that they are entitled to summary judgement on the 14th Amendment claim.

### IV. Defendants Claim That Plaintiffs Do Not Seek Summary Judgment On The State Law Claims As with their Fourteenth Amendment Claim

Here, this Court may find that the use of force against Gonzalez was objectively unreasonable. Then, it stands to reason that the state law claims for assault, battery, the Bane Act, and to some extent negligence are similarly entitled to judgement as a matter of law in favor of plaintiffs. Thus, Plaintiffs did seek summary judgment on the State law claims.

### CONCLUSION

Based on the above analysis, plaintiffs are entitled to summary judgment on both the Federal and California state law claims. This is supported by the examination of defendants' use of excessive force under the circumstances. Defendants used unnecessary lethal force in a situation where they could have investigated and resolved an investigation of a potential homeless trespasser without incident.

Dated: June 12, 2023  **THE LAW OFFICES OF JOHN L. BURRIS**

/s/ *James Cook*
Ben Nisenbaum, Esq.
James Cook
Attorney for Plaintiffs
MARIA GONZALEZ, et al.